[No. B064221. Second Dist., Div. Seven. Apr. 15, 1993.]

LINDA THIELE, Plaintiff and Appellant, v.
RML REALTY PARTNERS et al., Defendants and Respondents.

COUNSEL

Nebenzahl & Kohn, James A. Kohn and Elizabeth M. Matthias for Plaintiff and Appellant.

Irsfield, Irsfield & Younger, Ross R. Hart and Nancy Miller for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—The plaintiff, Linda Thiele (Thiele), appeals from a judgment of the superior court dismissing her complaint following the sustaining of defendant American Arbitration Association's (AAA) demurrer without leave to amend.

The central issue on appeal is whether the immunity shielding arbitrators from civil liability extends to organizations sponsoring arbitrations, and, if so, to what extent. We hold that it does and affirm.

### FACTS AND PROCEEDINGS BELOW

For purposes of appeal, we accept as true the properly pleaded factual allegations of the complaint.

In December of 1990 the appellant Thiele commenced arbitration proceedings with the respondent AAA. Thereafter a hearing was held and the matter was submitted to an arbitrator for decision.

On June 21, 1991, the appellant, outside of the arbitration proceeding, agreed to settle the matter with respondents in the arbitration proceedings for $250,000. On the same day appellant informed the AAA of this development and instructed it not to release an arbitration award.

On July 2, 1991, the AAA sent out the arbitrator's award, which was less than the settlement amount. After receiving the award, respondents in the arbitration proceedings took the position the matter had not been settled.

Thiele filed a complaint against the AAA on August 20, 1991, alleging negligence and breach of contract stemming from the AAA's delivery of the arbitration award contrary to her instructions. The AAA demurred, claiming it was immune from civil liability under the arbitral immunity doctrine. The trial court sustained the demurrer and later granted a motion to dismiss. On January 17, 1992, appellant timely filed a notice of appeal.

DISCUSSION

*I.   Statutory and Case Law Extend Arbitral Immunity to Sponsoring Organizations.*

■ Appellant argues the case of *Baar* v. *Tigerman* (1983) 140 Cal.App.3d 979 [211 Cal.Rptr. 426, 41 A.L.R.4th 1004] clearly states the immunity provided arbitrators from civil liability does not extend to organizations sponsoring the arbitration proceeding. In *Baar* the court limited arbitral immunity for sponsoring organizations only to those situations in which the arbitrator was immune as well. (*Id.* at p. 986.) Thus, in *Baar*, arbitral immunity did not protect the sponsoring organization from civil liability because the arbitrator was not immune for his act of failing to render an award. (*Id.* at pp. 982-986.)

In direct response to *Baar*, the Legislature adopted Code of Civil Procedure section 1280.1 to supersede the holding in that case and to expand arbitral immunity to conform to judicial immunity. (*American Arbitration Assn.* v. *Superior Court* (1992) 8 Cal.App.4th 1131, 1133 [10 Cal.Rptr.2d 899], citing *Coopers & Lybrand* v. *Superior Court* (1989) 212 Cal.App.3d 524, 535 [260 Cal.Rptr. 713].) Code of Civil Procedure section 1280.1 provides that "[a]n arbitrator has the immunity of a judicial officer from civil liability when acting in the capacity of arbitrator under any statute or contract."

Division One of this district suggested in *American Arbitration Assn.*, *supra*, that since Code of Civil Procedure section 1280.1 was enacted specifically to confer immunity where *Baar* said there was none, and *Baar* involved the immunity of a sponsoring organization, it would follow the immunity created for the arbitrator also serves to shield the sponsoring organization from civil liability. (*American Arbitration Assn.* v. *Superior Court*, *supra*, 8 Cal.App.4th at p. 1133.) Therefore, the court held, the AAA

was immune from liability for reopening a case after it had given notice the matter would be closed. (*Id.* at p. 1132.)

Therefore, it is recognized application of arbitral immunity is not limited to individual arbitrators. (8 Cal.App.4th at p. 1132; *Cort* v. *American Arbitration Association* (N.D.Cal. 1992) 795 F.Supp. 970, 971.) "To urge that the immunity should be limited to the arbitrators would be similar to arguing that judicial immunity should go no farther than the judge." (*Corbin* v. *Washington Fire and Marine Insurance Co.* (D.S.C. 1968) 278 F.Supp. 393, 398.) Also, it must necessarily extend beyond the arbitrators themselves if arbitration is to be an effective means of resolving disputes. (*Ibid.*)

Accordingly, courts have on the whole extended arbitral immunity to sponsoring organizations. (See Annot. (1992) 41 A.L.R.4th 1013.) In fact, it has been specifically extended to the AAA. (*American Arbitration Assn.* v. *Superior Court, supra,* 8 Cal.App.4th at p. 1132.) The conclusion to extend immunity to the sponsoring organization is a natural and necessary product of the policies underlying arbitral immunity. (*Corey* v. *New York Stock Exchange* (6th Cir. 1982) 691 F.2d 1205, 1211.) As the court noted in *American Arbitration Assn.* v. *Superior Court, supra,* 8 Cal.App.4th at page 1133, "a refusal to extend immunity to the sponsoring organization would make the arbitrator's immunity illusory . . . it would shift liability rather than extinguish it." (See also *Corey* v. *New York Stock Exchange, supra,* 691 F.2d at p. 1211.)

Appellant, however, urges the statutory scheme allowing for arbitral immunity shows the Legislature intended to limit the grant of arbitral immunity in Code of Civil Procedure section 1280.1 to individual arbitrators. The appellant first points out sponsoring organizations are specifically not referred to in Code of Civil Procedure section 1280.1. Second, appellant argues language which would have extended immunity to sponsoring organizations was suggested to the Legislature before enactment of Code of Civil Procedure section 1280.1 but was not adopted. Last, appellant contends Business and Professions Code section 6200, subdivision (f) has specific language providing arbitral immunity for sponsoring organizations. All this the appellant contends demonstrates legislative intent to limit the immunity provided in Code of Civil Procedure section 1280.1 only to individual arbitrators.

The court in *American Arbitration Assn.,* confronted with a similar argument regarding the statutory scheme, ruled this was not dispositive. (*American Arbitration Assn.* v. *Superior Court, supra,* 8 Cal.App.4th at p. 1134.) The court stated that "[w]here, as here, the intent to include sponsoring

associations within section 1280.1 is clear, the failure to expressly state that inclusion is immaterial." (*Ibid.*) We find this reasoning convincing.

II. *Arbitral Immunity Protects All Acts Within the Scope of the Arbitral Process.*

█ In the alternative, appellant argues that if arbitral immunity does exist for sponsoring organizations, the act complained of here—sending out the award contrary to express instructions—was administrative and was not part of the decisionmaking process. Consequently, it was not within the scope of arbitral immunity. We disagree.

In *Austern v. Chicago Bd. Options Exchange, Inc.* (2d Cir. 1990) 898 F.2d 882, 886, appellants argued the acts of improper notice and scheduling of the arbitration hearing and improper selection of arbitrators were ministerial or administrative in nature, and, therefore, were outside the scope of arbitral immunity. Essentially, appellants attempted to distinguish judicial or discretionary duties from ministerial or administrative activities. In rejecting appellants' argument, the court stated "semantically categorizing the challenged acts as 'ministerial' or administrative, as opposed to 'discretionary,' in large part misses the mark, since the scope of arbitral immunity is 'defined by the *functions* it protects and serves.'" (*Ibid.*, italics in original; see also Dobranski, *The Arbitrator as a Fiduciary Under the Employee Retirement Income Security Act of 1974: A Misguided Approach* (1982) 32 Am.U.L.Rev. 65, 79, fn. 64 [arbitration involves a function that in no way resembles the exercise of managerial or administrative authority].) Arbitral immunity shields all functions which are "integrally related to the arbitral process." (*Austern v. Chicago Bd. Options Exchange, Inc., supra,* 898 F.2d at p. 886; see also Domke on Commercial Arbitration, § 23.01 (rev. ed.) [arbitrators or quasi-arbitrators are exempt from civil liability for failure to exercise care or skill in the performance of their arbitral functions].) The court in *Austern* concluded the acts complained of were sufficiently associated with the adjudicative phase of the arbitration to justify immunity. (*Austern v. Chicago Bd. Options Exchange, Inc., supra,* 898 F.2d at p. 866.)

We find the rationale in *Austern* convincing. Furthermore, we find the act of sending out the arbitral award to be in the same category as the notice and scheduling activities *Austern* held to be "integrally related to the arbitral process." Accordingly, we reject appellant's argument this act was administrative, and hold that sending out the arbitral award was sufficiently associated with the adjudicative phase of the arbitration to justify immunity.

III. *Public Policy Favors Immunity From Civil Liability for Arbitrators and Organizations Sponsoring Arbitrations.*

Arbitration has evolved into a favored method for the resolution of disputes. (Domke on Commercial Arbitration, *supra,* § 2.01.) The California Legislature has found arbitration to be an efficient method of relieving the burden on the congested court system. (Code Civ. Proc., § 1141.10.) California courts have similarly viewed arbitration with favor. (*Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419] [the policy of the law is to favor arbitration]; *Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9 [arbitration is highly favored as a method of settling disputes]; *Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 534 [96 Cal.Rptr. 149] [one of the principal purposes which arbitration proceedings accomplish is to relieve that congestion and to obviate the delays of litigation].) Federal policy is in accord, as section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, evidences a congressional declaration of a liberal federal policy favoring arbitration agreements. (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1982) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927]; *Corbin* v. *Washington Fire and Marine Insurance Co., supra,* 278 F. Supp. at p. 398.)

This strong policy has created the need for independent judgments which are free from fear of legal action. (*Corey* v. *New York Stock Exchange, supra,* 691 F.2d at p. 1211.) Arbitral immunity furthers this need. (*Ibid.*) "[T]he independence necessary for principled and fearless decision-making" is best achieved by shielding persons involved in the arbitral process from "bias or intimidation caused by the fear of a lawsuit" arising out of the exercise of arbitral functions. (*Id.* at p. 1209.)

The existence of arbitral immunity is also in part due to the resemblance of arbitration proceedings to judicial proceedings. (691 F.2d at p. 1211.) As scholarly commentary has pointed out, "although arbitration is a proceeding different from a court proceeding and the functions performed by the arbitrator are somewhat different from those of the judge, arbitration is as much an adjudicatory process as the judicial process." (Dobranski, *supra,* 32 Am.U.L.Rev. at p. 79, fn. 64.) This comparability in functions creates a similar necessity for independence in decisionmaking. (*Corey* v. *New York Stock Exchange, supra,* 691 F.2d at p. 1211.) Thus, it is reasonable to use arbitral immunity just as judicial immunity does in the judicial arena, to protect the decisionmaking process from reprisals by dissatisfied litigants. (*Ibid.*; Domke on Commercial Arbitration, *supra,* § 23.01; see also *Baar* v. *Tigerman, supra,* 140 Cal.App.3d at p. 982 [arbitral immunity, like judicial immunity, promotes fearless and independent decisionmaking].)

Regardless, appellant alleges this rationale does not apply to the case at hand because the amount of an award is not at issue, only the act of issuing it. This act, appellant claims, should not be immune from liability. The strong public policy favoring arbitration, the facilitation of this policy by arbitral immunity, and the liberal construction of arbitral immunity persuade this court to reject appellant's argument. (*Corbin* v. *Washington Fire and Marine Insurance Co.*, *supra*, 278 F.Supp. at p. 397; *Austern* v. *Chicago Bd. Options Exchange, Inc.*, *supra*, 898 F.2d at p. 886.) The act of sending out the award is as much a part of the arbitral process as is determining the award. Not extending immunity for these acts to the AAA, an entity as indispensable to the arbitrator's job of arbitrating as are the courts to the judge's job of judging, would frustrate the purpose and effectiveness of arbitral immunity. (*American Arbitration Assn.* v. *Superior Court*, *supra*, 8 Cal.App.4th at p. 1134.)

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.